Rapallo,
 
 J.
 

 It was claimed upon the argument by the learned counsel for the appellants that at common law no information in the nature of a
 
 quo warranto
 
 could be brought against a corporation for a forfeiture of its franchises by misuser, when the acts complained of occurred more than twenty
 
 *590
 
 years before the institution of the proceedings; and in support of this proposition he cited the cases of
 
 Rex
 
 v.
 
 Dawes
 
 (4 Burr., 2022),
 
 Rex
 
 v.
 
 Marten
 
 (4 Burr., 2120), and
 
 The King
 
 v.
 
 Stacey
 
 (1 T. [D. & E.] R., 2).
 

 - The rule laid down in those cases was first established in 1763, in the
 
 Winchelsea Causes
 
 (4 Burr., 1963), of which litigation those cited are a part, but it has no reference to the class of cases to which this action belongs. It related to cases arising under the statute of 9 Anne, chap. 20, which authorized the exhibition of -an information in the nature of a
 
 quo warranto,
 
 on the relation of any person desirous to prosecute the same, by leave of the Courts of Queen’s Bench and the sessions of the counties Palatine and of Wales, against persons unlawfully holding certain municipal offices or franchises in cities, towns and boroughs.
 

 The cases in which the rule was adopted were applications for leave to file informations against various persons claiming to be freemen of the borough of Winehelsea, who had acted as such for many years; and the substance of the rule, which was unanimously adopted by the judges of the 3L B. (4 Burr, 1962), was, as stated in the MS. note of Tates, J., cited in
 
 The King
 
 v.
 
 Clarke
 
 (1 East, 40, 41), “ that the court would not .give leave
 
 to a eommon relator
 
 to commence a prosecution in the nature of a
 
 quo warremto
 
 after an acquiescence of twenty years; and that, although short of that time, they •would not grant an information unless it appeared to be a proper case.” The power to allow an information under the . statute of Anne was held to be discretionary, and the court adopted the limit of twenty years as one beyond which they would not listen to an application for leave to prosecute, while within that period the granting of it rested in their sound discretion. But it was at the same time conceded that no length of time would establish a right against the crown, and that if IT. M. attorney-general were to file an information on behalf of the crown, the defendant’s long enjoyment would be no bar without showing a good title.
 
 (King
 
 v.
 
 Wardroper,
 
 cited 1 East, 41; 1 T. [D. & E.] R., 3.)
 

 
 *591
 
 Under the ‘Revised Statutes no period of limitation was fixed in respect to proceedings of this character on behalf of the people. Suits and prosecutions in respect to liberties and franchises were expressly excepted from the provisions limiting the time for the commencement of actions by the State. (2 R. S., 293, §2; 23 Wend., 248.)
 

 The present action was brought by the State, acting by the Attorney-General, and no rule of the common law and no statute prior to the Code can he found, limiting the period within which it might be brought. By the Code, title 2, chap. 1, the statute of limitations, as contained in the Revised Statutes, was repealed and a new chapter substituted. The period of limitation of actions brought by the State for the recovery of real property was extended from twenty to forty years. The exception of actions concerning liberties and franchises was omitted. Certain classes of actions were specified, to each of which a period of limitation was assigned; and it was further provided that actions for relief not specially provided for must be commenced within ten years after the cause of action shall have accrued. A new and most important provision was added in 1849, viz.: That the limitations prescribed in that chapter should apply to actions brought in the name of the people of this State or for their benefit, in the same manner as to actions by private parties. (Code, § 98.)
 

 If there is any limitation of the time for bringing an action of this description, it can only be found in this section. It is useless, however, to pursue that inquiry in the present case, for the reason that by section 74 of the Code it is provided, that the objection that the action was not commenced within the time limited, can only be taken by answer. That defence has not been interposed, and consequently cannot be now considered.
 

 But although the defence of the statute of limitations is not available for the reasons mentioned, the defendants’ request to charge that the people could not, after the lapse of fifty years, claim a forfeiture of the charter, on account of deviations in the original construction of the road, from the
 
 *592
 
 requirements of the act of 1807, presents the very serious question whether so long an acquiescence does not amount to a waiver by the people of the breaches of condition charged, or, if not technically a waiver, whether it does not presumptively establish such a want of materiality in the deviations charged, as would prevent them from being of themselves sufficient causes of forfeiture.
 

 The corporation was legally formed, having been created by. special act of the legislature. The alleged ground of dissolution is not any defect in its organization, but the misuser of its franchises. Franchises may be forfeited by breach of the trust on which they were granted, and perversion of the end of the grant" or institution. (Com. Dig. Franchises, Gr. 3.) The performance of the duties enjoined by the charter is a condition of the grant.
 

 The statute, (Code S., 430), authorizes the bringing of an action to vacate the charter of a corporation whenever such corporation shall offend against any of the provisions of the act creating it, or shall have violated any law, and forfeited its charter by abuse of its powers. But it is for the court to determine as to the sufficiency of the offence to work a forfeiture.
 

 The conditions in question in this case were conditions subsequent, and a failure literally to comply with them was not necessarily a cause of forfeiture; a substantial performance was all that was required. (23 Wend., 586.)
 

 Materiality in the deviations in the construction of the road, from the directions contained in the act of 1807, and injury to the public resulting from such deviations, were most essential ingredients of the plaintiffs’ case.
 

 In the case of
 
 The People
 
 v. Thompson, (21 Wend., 235) an act authorizing the construction of a bridge required that there should be an opening between the centre arches of not less than twenty-five feet, for the passage of vessels. An information, in the nature of a
 
 quo warranto,
 
 was filed against the persons exercising the franchise for a violation of this condition, and the jury, by a special verdict, found that for
 
 *593
 
 ten years past the opening had been less than twenty-five feet. On this verdict judgment of ouster was rendered by the Supreme Oourt, that court overruling the objection that the verdict failed to show that the variation was material or injurious to the public. But that judgment was reversed by the Court of Errors on the ground that, to enable the court to pronounce judgment of ouster, the verdict must find not merely the breach ©f the letter of a condition subsequent, but of its intent and meaning, and that if the verdict find only particular facts which do not show affirmatively any certain and substantial breach of condition, judgment of ouster cannot be rendered. That the finding that the opening was not of the required breadth of twenty-five feet without finding that it was material, or that injury had resulted, or was likely to result to the public, or that the condition had not been substantially performed, was insufficient to sustain a judgment of ouster.
 
 (Thompson
 
 v.
 
 The
 
 People, 23 Wend., 537, 540, 582 to 585.)
 

 The first, second, third, fourth and sixth questions submitted to the jury, and answered by them in the negative, relate wholly to the manner of constructing the road in 1814. They are nearly in the words of the act of 1807 ; and it is evident, on reading them, that the most minute and trivial variation from the precise requirements of the statute would have required the jury to find as they did. The jury were not required to find, and did not find, as to the extent or materiality of the deviations, or whether any injury to the public had resulted or was likely to result from them, or whether there had been any substantial breach of the conditions of the charter in those respects; and therefore, according to the principles laid down in the opinion of Senator Yeeplanck, which was the prevailing opinion in the case of
 
 Thompson
 
 v.
 
 The
 
 People, judgment of ouster could not properly be rendered on those findings. (23 Wend., 584.) But in the case of
 
 The People
 
 v.
 
 The Kingston and Middletown Turnpike Company
 
 (23 Wend., 193), the Supreme Court, Co wen, J., dissenting, sustained, on demurrer, replications alleging causes
 
 *594
 
 of forfeiture in nearly the same language as those of the five findings now under consideration. Whether or not the replications in that case contained averments which would bring them within the principle of thé case of
 
 Thompson
 
 v.
 
 The People,
 
 does not appear in the case as reported; but it must be observed that the case of
 
 The People
 
 v.
 
 The Kingston and Middletown Turnpike Company
 
 was decided in May, 1840, more than six months before the reversal of the judgment in
 
 The People
 
 v.
 
 Thompson
 
 (21 Wend.), and that, according to the views then entertained in the Supreme Court, it was only necessary for the prosecution to establish a failure to comply literally with the terms'of the statute, and it was not required to show that such deviation was injurious to the public, but the burden of showing an excuse for non-performance was held to be on the defendant. The prosecution in that case, however, was instituted within a very short time after the construction of the road, and, assuming that the case is not overruled by
 
 Thompson
 
 v.
 
 The People,
 
 it did not present the question which arises in the present case, whether after the lapse of fifty-five years from the construction of the road, a variation in the original construction from the specifications contained in the act is of itself a cause of forfeiture, and whether in such a ¡ease there is not a legal presumption, from the great lapse of time, that the variation was immaterial and not injurious to .the public. The original method of construction of the roadbed, fifty-five years before the commencement of this action, is hardly important to the present generation; for although the company may have been bound originally to put it in a certain condition, they were not bound to continue the road 'in -any respect precisely as it was originally constructed.
 
 (People
 
 v.
 
 Bristol and Rensselaerville Turnpike Co.,
 
 23 Wend., 231, 232.) All that they were bound to do was to keep it in a good state of general repair. (Id.) After the lapse of fifty-five years, very little would have remained of the original road-bed, and to say, for instance, that the charter should be forfeited now, upon the allegation that fifty-five
 
 *595
 
 years ago there was not nine inches of gravel or stone facing upon it, or that it did not rise in the middle with a gradual arch, or that a ditch was not dug at the side, when the people of that day and generation did not complain, and for all that we can know, at the present day, its condition was then satisfactory to the public, would be carrying the doctrine of forfeiture for misuser to an extent which I do not believe to be warranted by any precedent.
 

 If in the original construction of the road there were any permanent defects arising from a failure to comply with the statute, which rendered the road injurious or inconvenient to the public, no doubt that would be a continuing wrong and a just foundation for this proceeding. But the fact must be established, and the injury to the public is as essential an ingredient of the right of action as the deviation from the statute.
 

 It certainly ought not to be presumed after an acquiescence of over fifty years, so as to render the failure to comply with the statute in 1814 sufficient cause, of itself, for a forfeiture of the charter.
 

 The fourth finding is subject to a further objection that it establishes no cause of forfeiture, for the reason that a fender was not required by the act of 1807, where the road was less than full width, except under certain circumstances, which are not found to have existed. (23 Wend., 231.)
 

 I think, therefore, that the facts found in the 1st, 2d, 3d, 4th and 6th findings were not sufficient, after the lapse of fifty years, to warrant a judgment of ouster, even if they would be sufficient at any time, in the absence of a finding, that the deviations were material and that injury resulted therefrom.
 

 The two remaining findings are the 5th and 7th. These are insufficient for the reason stated in the ease of
 
 The People
 
 v.
 
 The Bristol and Rensselaerville Turnpike Co.
 
 (23 Wend., 231). The defendants were not bound to continue the road in the same condition required in its original construction,
 
 *596
 
 and a finding of omission to beep in repair, in the general terms employed in this verdict, is insufficient.
 

 To warrant a forfeiture it must he alleged and found that the want of repair was such as to render the road dangerous or inconvenient to travelers. (23 Wend., 221.) The judge having instructed the jury that the company was bound to keep the turnpike in the same condition in which they were required by law to construct the same, the 7th finding would be satisfied by proof of a failure to keep up the required amount of facing, although in other respects the road was in sufficient repair for ordinary purposes. Furthermore, the finding does not specify the time when or extent to which the road was out of repair; it covers the whole period from 1814 to 1870, and would be satisfied by a single omission during that period. The Eevised Statutes (2 E. S., 587, §§ 45, 46, 47) provide a remedy, far short of a forfeiture of the corporate franchises, for ordinary delinquencies of this
 
 description;
 
 and although, the remedy thus provided may not be exclusive of all others, yet where a forfeiture is claimed, by reason of such an offence, the court must, judge whether the extent or degree of the offence is such as ought to subject the corporation to, capital punishment, or whether the party complaining should be left .to the remedy pointed out by the statute. FTo such judgment can be formed unless the record disclose the facts upon which the determination of such a question must depend.
 

 The defects in these findings cannot be cured by intendment. The general verdict was directed by the court on the strength of the special findings, and does not add to their forcp or effect. A special verdict does not stand on the same footing with the findings of the court or a referee. The court or referee renders the judgment, and may be presumed to have found facts not expressly stated. But where the verdict is special the jury cannot be presumed to have found more than is specified in their verdict.
 

 To form a sufficient foundation for a judgment of ouster for the forfeiture of a franchise not originally usurped, but legally vested, the verdict must show the fact, not merely of a breach
 
 *597
 
 of the letter of the subsequent condition, but of its intent and meaning, and must find such facts as the court may adjudge to amount to a substantial breach of the condition. (23 Wend., 587, 588.)
 

 The findings of the jury in this case fall far short of this requirement, and it would be unsafe
 
 to give onr
 
 sanction to a judgment resting on so defective a foundation.
 

 The judgment appealed from should be reversed, and a new trial ordered, with costs to abide the event.
 

 All concur.
 

 Judgment reversed.