THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-ENT, *v.* THE BROADWAY RAILROAD COMPANY OF BROOKLYN, APPELLANT.

*Quo warranto — forfeiture of franchises, by reason of delay in the construction of an. elevated railroad in certain streets of Brooklyn when " opened, graded and paved " — subsequent legislation precluding the continuance of the construction of the road — Laws 1860, chapter 461.*

An action of *quo warranto* was brought to annul the charter of the Broadway Railroad Company of Brooklyn, or to vacate and annul the additional franchises, because of the non-user thereof, granted to it by chapter 461 of the Laws of 1860, by section 3 of which act it was provided: " Said railroad company shall. complete the tracks upon the said several streets and avenues or roads named in. the first section of this act, on or before the 1st day of October, 1861, or as soon thereafter as the said streets and avenues within said city shall have been opened,. graded and paved, and upon any plank-road or roads whenever the consent of the plank-road authorities shall have been obtained."

*Held,* that the act of 1860 was a grant *in presenti,* to the defendant, of all the privileges and franchises mentioned in it; that time was not annexed to the vesting of the grant, nor was it to the possession and enjoyment of the franchise granted.

That the defendant had a right to postpone the construction of its road until the streets mentioned should have been opened, graded and paved, but that such postponement did not prevent the vesting of the franchise itself.

That this privilege of postponing the construction of its road extended, as to each. branch, until the streets on the line of the whole branch should have been. opened, graded and paved.

That the fact that the defendant, prior to such work of opening, grading and paving throughout an entire branch, constructed a portion of its road upon one of the paved streets of such branch, was not an admission by the defendant of its duty to complete that portion of the road extending over the entire branch, that year.

That the defendant had, at its option, the privilege to construct its railroad over any of the streets, on either branch of the road, which were opened, graded and paved when the act of 1860 was passed, and to continue the construction as further parts of the branch should be opened, graded and paved, but that it was not its duty to do so, and that it could safely await the opening of all the streets on any branch before its duty to complete any part of that branch would mature.

That where, by reason of subsequent legislation, it became legally impossible to construct a certain branch, there would exist no forfeiture because of its non-construction.

That the failure to construct any one branch would not be a cause of forfeiture as to other distinct branches.

That the fact that the act of 1860 conferred additional franchises upon an exist
ing corporation enjoying other franchises conferred no better title to abuse or
disuse the additional franchises than if the same had been granted to a corpora-
tion created solely to enjoy them.

Where the State has fairly and expressly granted a franchise the courts do not, in
actions to declare it forfeited, resort to narrow or forced constructions in order
to condemn the grantee and establish a forfeiture of the franchise on its part.

APPEAL by the defendant from a judgment, entered on the 5th
day of September, 1889, in the office of the clerk of the county of
Albany, after a trial at a Special Term held in said county, where
it was decided that the defendant, by reason of its omissions and
failures to construct its road in accordance with the terms thereof,
had surrendered all the corporate privileges and franchises granted to
it by an act of the legislature passed on the 16th day of April, 1860,
entitled " An act to amend an act to authorize the laying of a rail
track in Broadway and through certain other streets in the city of
Brooklyn and New Lots in the county of Kings," and debarring
the defendant from exercising any of the corporate rights, privileges
or franchises given to it in and by the said act.

The action was in the nature of a *quo warranto* brought by the
attorney-general to annul the charter of the defendant, or to vacate
and annul the additional franchises granted to it by chapter 461,
Laws of 1860, because of the non-user of said franchises.

Judgment of forfeiture of the franchises granted by the act of 1860
was awarded and the defendant perpetually enjoined from their
exercise.

*George W. Wingate*, for the appellant.

*Jesse Johnson*, for the respondent.

LANDON, J. :

The Broadway Railroad Company of Brooklyn was organized in
1858, under the general railroad act of 1850, and under chapter 303,
Laws 1858, for the purposes of constructing and operating a street
railroad from the East river, at the foot of Broadway, easterly through
that street to the village of East New York, at or near the south-
easterly line of the city of Brooklyn, a distance of four and three
fourth miles.

It completed that line of railroad in 1859, and has since main-

tained and operated it. No complaint is made that it has failed in its duty or obligations to the public respecting the franchises conferred by its original charter, and the judgment under review reserves to it such franchises unimpaired. The questions presented for review arise under chapter 461 of the Laws of 1860, entitled "An act to amend 'An act to authorize the laying of a rail track in Broadway, and through certain other streets in the city of Brooklyn and New Lots, in the county of Kings,' passed April seventeenth, eighteen hundred and fifty-eight."

The object of this act was to authorize the defendant to construct three branches from its main line. These branches have not yet been completed, and the judgment appealed from vacates and annuls the franchises granted by the act to the defendant. Whether the judgment should be affirmed depends upon the question whether, upon a proper construction of the act, the defendant is in default because of non-compliance with its provisions, or whether it has a valid excuse for a non-compliance with some of its provisions, and the time for compliance with others has not expired.

It will be convenient to insert the material sections of the act, indicating by numerals the three separate branches, and by *italics* the streets which at the time of the passage of the act were not opened, graded and paved, and by CAPITALS the streets which yet remain either wholly or in part unopened, graded and paved.

"Section 1. It shall be lawful for the Broadway Railroad Company of Brooklyn, organized by virtue of the act hereby amended, (1.) to lay down a single line of railroad track commencing at their present track at South Sixth street, through Eighth street, to and across Broadway, to Ross street, and double lines of railroad tracks through said Ross street and Bedford avenue to Fulton avenue; and whenever *Nostrand* or ROGERS avenue shall have been legally opened, graded and paved, to extend the line of double tracks through Fulton and either *Nostrand* or ROGERS avenues to the village of Flatbush. (2.) Also, to lay a single line of railroad track, commencing at their present track on South Sixth street, through Eleventh street to South Fifth street; through South Fifth street, to Montross avenue; through said avenue to Morrell street; through Morrell to Johnson street; through Johnson street to intersect the track of said company on Broadway, and a double

line of tracks from Morrell street through *Johnson* to its intersection with the CYPRESS HILLS plank-road, and through and over said plank-road to CYPRESS avenue; and whenever CYPRESS avenue shall have been legally opened and graded, to extend a double or single track on said avenue to Cypress Hills Cemetery. (3.) Also, whenever WHITE, BOGART or THAMES streets, and CENTRAL or KNICKERBOCKER avenue, shall have been legally opened and graded, the said company are authorized to lay a double or single line of railroad tracks through and over the same to the city line, from the intersection of either WHITE or BOGART street with the CYPRESS HILLS PLANK-ROAD and the track hereinbefore authorized to be laid on said plank-road, with the privilege to lay tracks for the necessary turnouts, which tracks, when laid, shall be maintained and operated by said company in conformity to the several provisions of the act hereby amended relative thereto.

"Section 3. Said railroad company shall complete the tracks upon the said several streets and avenues or roads named in the first section of this act on or before the first day of October, eighteen hundred and sixty-one, or as soon thereafter as the said streets and avenues within said city shall have been opened, graded and paved, and upon any plank-road or roads, whenever the consent of the plank-road companies shall have been obtained."

Upon the first or Flatbush branch the defendant has never attempted to construct any railroad. It is about two and one tenth miles long. Bedford avenue forms about one half of this branch. The trial court found that the defendant might have constructed that portion of this branch between its main line and Fulton street on Bedford avenue, by October 1, 1861; the streets for that distance being opened, graded and paved. From Fulton street to Flatbush the streets were unopened and that portion of the branch was still farming lands. By chapter 905, Laws of 1867, the construction of any railroad on Bedford avenue was absolutely prohibited, and the court found that thereby it became, and now is, impossible for the defendant to build the line from Broadway to Flatbush. Before the act of 1867 took effect Nostrand avenue was unopened, unpaved and ungraded for a distance of half a mile, and Rogers avenue wholly unopened. These avenues are nearly parallel and the defendant had the option to take either of them from Fulton street to Flatbush.

Upon the second or Cypress Hills Cemetery branch, the defendant did, before October 1, 1861, construct so much of the road as extended from Broadway up through Eleventh, South Fifth and Montrose streets, to and through Morrell street, and thence down Johnson to Broadway; these streets, being on those portions occupied by the tracks, opened, graded and paved. This formed a loop or the prongs of a fork, touching the main line at different points, the handle of which was to extend, whenever the Cypress Hill plank-road and Cypress avenue should be opened, to the Cypress Hills Cemetery. The prongs of the fork and their connection through Morrell street were about a mile long; the extension from Morrell street to the cemetery was about three miles long and through farming lands. The court found that it was then impossible to build the extension, because Johnson avenue (then Cypress Hills plank-road) was not then opened, graded or paved beyond Bushwick avenue, and no part of Cypress avenue was opened, graded or paved. The defendant operated the loop until 1876, when it took up the tracks and has not since relaid them. The court found that it took up the loop, because it did not pay to operate it, and because it saw no prospect of the streets forming the extension to the cemetery being opened so as to permit it to lay the extension. It also found that defendant has not since rebuilt it, because the streets forming the extension still remain, in great part, unopened, ungraded and unpaved.

Respecting the third branch, none of the streets composing it were opened when the act of 1860 was passed. Some of them are yet wholly unopened. Central avenue forms the greater part of it. This avenue is now opened, graded and paved in part. The court found that in January 1887, the defendant commenced, in good faith, the construction of its road on Central avenue; it spent in so doing $12,400, and had laid 3,367 feet of track in that street, when it was stopped by adverse litigation, by which it has since been, without laches upon its part, prevented from continuing and completing said route.

The court held and decided that it was the duty of the defendant to construct the railroad by October 1, 1861, upon each branch, upon such of the streets as were opened, graded and paved when the

act was passed, and upon the remaining streets as fast as they should, respectively, be opened, graded and paved; that because it was in default in these several respects it had forfeited all of the privileges and franchises conferred by the act of 1860, and judgment of forfeiture was directed, also, perpetually enjoining the defendant from the use or exercise of any of them.

The theory upon which the judgment is founded is, that, so far as the route through the several branches was upon streets which were opened, graded and paved when the act of 1860 took effect, the act was a grant *in presenti*, and the duty was enjoined upon the defendant to complete such portions by October 1, 1861; and that, so far as the route was upon streets thereafter to be opened, graded and paved, the act was a grant *in futuro*, and completion was postponed as to each street until it should be opened graded and paved; and that defendant was in default as to any street so opened, graded and paved upon which the railroad was not complete upon the completion of the pavement, irrespective of the fact that it could not complete the whole line. It will be seen that at no time since the act was passed has any one of the three branches been completely opened, graded and paved throughout its entire length.

We think the judgment must be reversed. It seems to us that the act of 1860 was the grant *in presenti* to the defendant of all the privileges and franchises mentioned in it. The defendant accepted it, and upon that acceptance became fully vested *in presenti* of all it conferred. Time was not annexed to the vesting of the grant, nor was it annexed to the possession and enjoyment of the franchise granted. Immediate possession and enjoyment of the entire privileges and franchises were permitted, so far as the State could confer them. But as some of the streets had not yet been legally opened, the State could not, as against private owners of the farm lands through which they were delineated on the map, confer present title to them. But, had the defendant bought such private lands, its franchise to lay its railroad thereon was complete. The right to postpone the construction of its road, until such streets should be opened, graded and paved, was a privilege granted to the defendant in addition to its franchise, and not a burden annexed to it, much less a postponement of the vesting of the franchise itself. The defendant was not forbidden to enter upon such streets; it was privileged not to enter. The important question is, did this

privilege extend, as to each branch, the time of its completion until the streets of the whole branch should be opened, graded and paved? We think it did: The trial court found that the object of the act was to enable the defendant to construct three branches from its main line to three separate points. Nothing is said in the act of 1860 respecting the time in which to begin the construction of any one branch; only the time for its completion is specified. Manifestly, the completion of the branch, not of its separate fragments, is provided for. The third section, above quoted, contains the privilege of postponement of completion. It is not there said that one part shall be completed earlier than another; it is not declared that anything less than the whole shall be completed before the alternative appointment of time. It is urged that the intention of the legislature must be regarded. True; but to do that we must go back to the stand-point of 1860. It is probable that in 1860 it was not foreseen that the tide of population would avoid for so many years the streets and avenues designated as the route of these branches. It probably was expected that it would move thitherward and give the impulse of self-interest to the speedy completion of these branches. But it was not known, and hence it is probable the alternative provision of time, dependent upon the opening, grading and paving of the streets, was inserted with the just purpose of not insisting upon the completion of these branches before there should be passengers to use them.

It is urged that the construction in 1861 of the loop upon the paved streets of the second branch was a practical admission by the defendant of its duty to complete that portion that year. The defendant had the privilege to build the loop that year, and, doubtless, did so, in the expectation that it could speedily construct the remainder. It made a mistake as to the future, but it lost no privilege by its error in hopefulness or prophecy.

If each branch is to be separated into fragments and each fragment be separately considered, then it ought to follow that the franchise is forfeited by non-user only of such fragments of the route as have been opened, graded and paved, and remains in full vigor as to such other fragments as yet remain to be opened, graded and paved. It seems like an absurdity to suggest that, for the purposes of condemnation, all of the branches, or all of any one branch is to

be considered as an indivisible entirety, the default in the least portion of which is the forfeiture of all, and yet to hold that the completion of the entirety within the time allowed for such completion is not a timely completion of the parts composing the entirety. As the act of 1860 provides that " it shall be lawful " for the defendant to lay the tracks, and also extends the time for completion until the streets are opened graded and paved, it seems to be a natural construction that " it shall be lawful " until the time shall have expired. From aught that appears in the act or the case, the parts of any branch are valueless except as parts of a completed whole.

It is urged that, because it appears from the act that some streets forming portions of the first and second branches were ready for enjoyment, and the date of October 1, 1861, is first assigned to " complete the tracks upon the said several streets and avenues or roads named in the first section of this act," that such date must be construed as referring to the railroad upon the streets already opened, graded and paved, and that the alternative future date has reference only to the streets not then opened, graded and paved. But it is seen that all the streets, avenues and roads are grouped together. It would have been simple and easy to have distinguished between them, if any distinction was intended. A construction which should require the defendant to build parts of any branch — valueless as parts — thirty years before the valuable whole could prudently be completed, would be harsh in the extreme.

The construction insisted upon by the people is narrow, but this narrowness is defended upon the ground that, as between the State and its grantee of a franchise, the grant must be construed most strongly against the grantee. That principle is applicable when invoked against a corporation which claims that it is protected or exempted by its charter from liabilities and duties common to others, or claims privileges oppressive to the public. But it is not to be invoked in support of the forfeiture of a franchise. Such a forfeiture is in the nature of a penalty for wrong doing. The judgment of forfeiture is self-executing and instantly annihilates or confiscates the defendant's estate, or so much of it as is forfeited.

The law may justly hold that whoever asserts a franchise to commit a nuisance, or avoid taxation, or to be exempt from competition,

or from common liability or the performance of common obligations, must put his finger upon the express grant of privileges so odious and onerous to others. But it does this at the instance of those who assert rights in hostility to such claims and then straitly construes the charter, which is the pretended warrant for them. (*Charles River Bridge* v. *Warren Bridge*, 11 Pet., 496; *Fertilizing Co.* v. *Hyde Park*, 97 U. S., 659; *Auburn and Cato Plankroad Co.* v. *Douglass*, 9 N. Y., 444.) But when the State has fairly and expressly granted a franchise, the courts do not, in actions to declare it forfeited, resort to narrow or forced constructions in order to condemn the grantee and establish the forfeiture. On the contrary, they exercise great caution and seldom adjudge a forfeiture unless there is a manifest and substantial violation of the grant. (High on Extraordinary Remedies, § 649; *Thompson* v. *People*, 23 Wend., 537, 586; *People* v. *Williamsburgh Turnpike and Bridge Co.*, 47 N. Y., 586.)

The terminus of every branch is still inaccessible. The defendant's privilege is to proceed from the beginning to the end of each branch, and it would seem that, if it shall arrive at any terminus within the time appointed in the act conferring the privilege, it will be there when due.

We think the proper construction of the act of 1860 is, that the defendant had, at its option, the privilege to construct its railroad over any of the streets on either route which were open, graded and paved when the act was passed, and to continue the construction as further parts of the route should be opened, graded and paved; but that it was not its duty to do so, and that it could safely await the opening of the entire route of any branch before its duty to complete any part of that branch would mature.

The foregoing views apply to each branch and require a reversal of the judgment. But it is to be observed, respecting the first or Flatbush branch, that by the act of 1867, forbidding the construction of any railroad upon the Bedford avenue portion of it, if any cause of forfeiture then existed, the legislature took its own measure of satisfaction therefor. The legislative recall of the substantial part of the Flatbush franchise either revoked the whole or confirmed the little that was left, and in either case removed all grounds for judicial forfeiture for past defaults. The finding that, since the

passage of the act of 1867, it has been legally impossible to construct this branch precludes the liability of incurring a forfeiture for non-construction, since no legal duty can exist to perform what is legally impossible.

The failure as to any one branch cannot be a cause of forfeiture as to other distinct branches. The first, or Flatbush, branch is practically removed from the case by the act of the legislature. The second branch, in considerable part, still lies upon unopened or unpaved streets. The third branch is in a similar condition, and the defendants, in 1887, in advance of any immediate prospect of opening of all its parts, lawfully commenced to lay its tracks upon it, and continued to do so until stopped by injunctions procured at the instance of rival parties. The time for completion not having been reached the defendant's franchises continue.

The defendant objects that the court has not jurisdiction to vacate some of the franchises granted to a corporation, but must vacate and annul the entire charter or nothing.

We have preferred to consider this case upon the merits. We assume jurisdiction in the court to render the judgment appealed from, provided its construction of the act of 1860 is valid. If a corporation had been organized to exercise the franchises granted by the act of 1860 to the defendant, and had been for twenty-eight years in default in their use without valid excuse, judgment in a proper action vacating both charter and franchises would be within the jurisdiction of the court. The fact that the act of 1860 conferred additional franchises upon an existing corporation, enjoying other franchises, cannot give any better title to abuse or disuse the additional franchises than if granted to a corporation created solely to enjoy them. It may be that this case does not fall within the letter of section 1797 and the other sections of the Code of Civil Procedure relating to an " action by the people to annul a corporation." But we think the case is within the spirit of those sections, and of the common law which they were intended to embody.

We have not thought it necessary to consider whether the several acts cited by the defendant granting extensions of time to railroad corporations to complete their roads, and chapter 788, Laws of 1873, granting it additional privileges, constitute defenses against forfeiture. If they do, the defendant holds its franchises by a title additional to the one we consider to be valid.

The judgment is reversed, with costs; and, since there is no dispute as to the facts, judgment is directed in favor of the defendant dismissing the complaint, with costs.

LEARNED, P. J., and FISH, J., concurred.

Judgment reversed and complaint dismissed, with costs.